UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDRAE T. HALL,

                Plaintiff,

          -against-

SUFFOLK COUNTY CORRECTIONAL
FACILITY,

                Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

20-CV-2809 (GRB)(JMW)

**A P P E A R A N C E S :**

**Andrae T. Hall**
753586
Suffolk County Correctional Facility
110 Center Drive
Riverhead, NY 11901
*Pro Se Plaintiff*

**Stacy A. Skorupa**
Suffolk County Department of Law
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, NY 11788
*For Defendant*

**WICKS,** Magistrate Judge:

## I.     PRELIMINARY STATEMENT

*Pro se* Plaintiff Andrae T. Hall, commenced this action pursuant to 42 U.S.C. § 1983

against Defendant Suffolk County Correctional Facility, alleging violations of his Fourth and

Fifth Amendment rights to due process and fair and equal treatment as a result of being

restrained by cuffs and shackles and put into "administration segregation"[1] while being held in

---

[1] Plaintiff characterizes the segregation as "administration segregation," which the Court refers to hereinafter as "administrative segregation."

pretrial detention.  (DE 1; DE 1-1.)  Before the Court on referral from the Honorable Gary R.

Brown is Defendant's motion to dismiss the Complaint (DE 38.)  Defendant asserts that Plaintiff

has failed to state a claim for violations of his civil rights based on excessive force, his due

process rights, or any constitutional violation on the part of any individual.  (DE 38-6.)

Defendant further argues that Plaintiff should not be granted leave to amend his Complaint

because any such amendments would be futile.  (*Id.*)  For the reasons that follow, the

undersigned respectfully recommends that Defendant's motion be GRANTED.


## II.    LEGAL STANDARD UNDER RULE 12(b)(6)

The following facts are in part drawn from Plaintiff's Complaint (DE 1) and the

accompanying affidavit[2] (DE 2) and are presumed to be true for purposes of this Report and

Recommendation.  The Court also draws facts from several documents that were not attached to

Plaintiff's Complaint, but were attached to Defendant's motion and to Plaintiff's opposition.  As

such, a review of the appropriate standard of review is warranted.

When considering a motion to dismiss, the Court must assume all well-pleaded facts to

be true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l*

*PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions

or "threadbare recitals of a cause of action's elements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663

(2009).  The Court uses a two-pronged approach to analyze the sufficiency of the pleadings in

which District courts are to first "identify[ ] allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth."  *Id.* at 664.  "Though legal conclusions

---

[2] In deciding a motion to dismiss, the Court may consider any document attached to the complaint.  *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-CV-2343 (JS)(ARL)., 2015 WL 631962 at *2 (E.D.N.Y. Feb. 12, 2015).

can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)). "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 678 (citing *Twombly* at 555).

Review of a *pro se* plaintiff's complaint carries with it additional considerations. That is, it must be construed broadly and interpreted as raising the strongest arguments. *See McIntyre v. Longwood Cent. School Dist.*, No. 07-CV-1337 (JFB)(ETB), 2008 WL 850263, at *3 (E.D.N.Y. Mar. 27, 2008). When reviewing a motion to dismiss a *pro se* complaint, the Supreme Court instructed long ago that a *pro se* complaint must be held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and therefore may only be dismissed if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 521 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). However, "to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." *Bey v. La Casse*, 20-CV-9171 (LLS), 2021 WL 1143690, at *1 (S.D.N.Y. Mar. 22, 2021). Even *pro se* complaints must pass muster under the

3

"plausibility" standard. *Ellis v. City of N.Y. Health & Hosp. Corp.*, 17-cv-6177 (BMC), 2017 WL 5001988, at *1 (E.D.N.Y. Oct. 30, 2017) (citation omitted).

Generally, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may not consider matters outside of the pleadings otherwise Rule 12(d) requires the motion to be treated as one for summary judgment under Rule 56. *Bond v. City of N.Y.*, No. 14-CV-2431 (RRM)(VVP), 2015 WL 5719706, at *2 (E.D.N.Y. Sep. 28, 2015). However, for purposes of a motion to dismiss, the following documents may be considered without converting the motion to one for summary judgment: documents attached to the complaint or incorporated by reference, documents integral to the complaint, and matters of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence. *Id.* (citing among others *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order)). The Court notes that when Defense Counsel served the motion to dismiss upon Plaintiff, they advised Plaintiff that they would be relying on the two exhibits discussed below, and provided a Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings (dated June 17, 2021), full text of Rule 12 and Rule 56 of the Federal Rules of Civil Procedure, and full text of Local Civil Rule 56.1. (DE 38.)

Defendant's Exhibit A to the motion to dismiss is a record from the New York State Unified Court System website, which lists multiple criminal charges regarding the incident for which Plaintiff is currently in pre-trial confinement for, where he allegedly stabbed an off-duty Rikers Island Corrections Officer.[3] (DE 38-4.) The Court takes judicial notice of the state court documentation and will therefore consider the document for purposes of this report and

---

[3] In opposition, Plaintiff also attached a copy of this record as his own Exhibit B, and added his own writing and markups, stating "If Suffolk County is going to digg [sic] get your information correct." (DE 38-13.)

4

recommendation. *See O'Neal v. East Hampton Town*, CV 16-0579 (JFB) (GRB), 2017 WL 4174788, at *1 n.2 (E.D.N.Y. Aug. 28, 2017) (citing *Nicaisse v. Mel S. Harris & Assocs., LLC*, No. 14-cv-1569 (ADS)(AYS), 2015 WL 5561296, at *4 (E.D.N.Y. Sep. 19, 2015) (taking judicial notice of the public records of the New York State Unified Court System available on its website); *Cruz v. Reilly*, No. 08-CV-1245 (JFB)(AKT), 2009 WL 2567990, at *1 n.1 (E.D.N.Y. Aug. 18, 2009) (same); *see also Bond*, 2015 WL 5719706, at *2 (holding that courts may take judicial notice of public records such as arrest reports and indictments).

Defendant's Exhibit B to the motion to dismiss is a record/print-out from the Suffolk County Sheriff's Office Correctional Investigations Section Restraint Review DataBase. (DE 38-5.) The document notes that Plaintiff is under Cuff & Shackle & Waist Restraint restrictions, contains a narrative stating the basis for the restriction, and contains multiple entries spanning from to July 16, 2019 through April 9, 2021 regarding Plaintiff's initial placement in cuff and shackle, subsequent altercations in the correctional facility, and the status of the restrictions. (*Id.*) The Court finds this document to be central to Plaintiff's claims and therefore integral to the Complaint. *See Obilo v. City Univ. of City of N.Y.*, Civil Action No. CV-01-5118 (DGT), 2003 WL 1809471, at *4 (E.D.N.Y. Apr. 7, 2003) (holding that documents central to plaintiff's claims could be considered on a Rule 12(b)(6) motion); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (considering documents not attached to complaint, but which defendant attached to Rule 12(b)(6) motion because "there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

Plaintiff attaches as Exhibit A to his opposition papers an indictment sheet dated October 4, 2019 listing 18 counts. (DE 38-13.) The document does not contain Plaintiff's name

anywhere, nor does Plaintiff refer to the document in his opposition.  Accordingly, the document is not considered for purposes of this report and recommendation.

### III.   BACKGROUND

Plaintiff was initially being held at Rikers Island as a result of multiple charges including Attempted Murder in the First Degree for allegedly stabbing an off-duty police officer.  (DE 38-4; DE 38-5.)  Plaintiff was transferred from Rikers Island to Suffolk County Correctional Facility in Riverhead on July 16, 2019.  (DE 1; DE 2.)  Upon arrival at the Correctional Facility, Plaintiff was asked to sign a cuff and shackle restraint form.  (DE 1.)  The restraint required Plaintiff to be cuffed and shackled while moving through the Correctional Facility and Plaintiff was to remain cuffed and shackled pending "ISU investigation" after 30 days.  (DE 1; DE 38-5.)  Plaintiff was reviewed on August 7, 2019, September 7, 2019, and October 4, 2019, and each time the restraints were continued.  (DE 38-5.)  On November 6, 2019 and December 4, 2019, Plaintiff refused to sign the restraint form.  (*Id.*)  According to Plaintiff, in November (presumably of 2019) he was told by a security officer named "Mr. B." that he was under the cuff and shackle restraint because he was from Rikers Island and should not be trusted.  (DE 1; DE 2.)

On January 29, 2020, Plaintiff had to be separated from another inmate because of a fight.  (DE 38-5.)  On January 30, 2020, Plaintiff had another physical altercation with the same inmate and was evaluated by the medical department and rehoused pending a hearing.  (*Id.*)  On March 7, 2020, Plaintiff started yelling at an officer when he was let out of his cell for the recreation period, refused several orders to stop yelling, and then threw milk, bread, and garbage in the officer's path.  (*Id.*)  Plaintiff refused several more orders to "lock in."  (*Id.*)  At an unspecified time, Plaintiff alleges that he filed a grievance and a sergeant, lieutenant, and sheriff,

told him that he was on cuff and shackle restraints due to a ticket he received in March 2020. (DE 2.)

As of the date Plaintiff prepared his Complaint, June 18, 2020, he was still under the cuff and shackle order. (*Id.*; DE 1.) The Complaint also references Plaintiff being placed in administrative segregation, without any detail as to when he was placed there, how long he was there, and whether he was afforded a hearing regarding such segregation. (DE 1.) Plaintiff asserts that he has suffered mental injuries, specifically experiencing anxiety every time he has to get cuffed and shackled to move throughout the facility. (*Id.*)

## IV.   PROCEDURAL SETTING

Plaintiff commenced this action by filing the Complaint on June 24, 2020. (*Id.*; DE 2.) On April 16, 2021, Defendant filed a letter requesting a pre-motion conference in anticipation of filing a Rule 12(b)(6) motion to dismiss. (DE 17.) On April 19, 2021, the Honorable Gary R. Brown waived the pre-motion conference requirement and granted Defendant's request to move to dismiss. (Electronic Order dated Apr. 19, 2021.) On June 3, 2021, all pretrial proceedings and dispositive pretrial motions were referred to the undersigned for a Report and Recommendation. (Electronic Order dated June 3, 2021.) The fully submitted motion was filed on November 22, 2021 and is before the undersigned to issue a Report & Recommendation.[4] (DE 38.)

_____

[4] Defendant originally filed the motion to dismiss on August 16, 2021 (DE 31). During a Status Conference on August 25, 2021, Plaintiff was directed to serve opposition on or before October 29, 2021, and Defendant was directed to serve reply papers on or before November 30, 2021. (DE 33.) On November 15, 2021, Defendant's motion to dismiss was denied without prejudice and with leave to re-file after the motion was fully briefed, in accordance with the undersigned's Individual Rules pertaining to the filing of dispositive motions. (Electronic Order dated Nov. 15, 2021.)

The Honorable Gary R. Brown entered an additional Order referring the motion to dismiss to the undersigned. (Electronic Order dated Nov. 22, 2021.)

## V.    DISCUSSION

Although Plaintiff brought claims under the Fourth and Fifth Amendments for "fair and equal treatment," (DE 1), the Court liberally construes the claims to plead causes of action for excessive force in violation of Plaintiff's Fourth Amendment and Fourteenth Amendment Due Process rights rather than an Equal Protection claim, based on the facts alleged.  *See Abbas v. Tate*, 20-cv-3636 (JGK), 2022 WL 355401, at *2 n.2 (S.D.N.Y. Feb. 4, 2022) (holding that *pro se*'s complaint did not allege an Equal Protection claim because "the plaintiff does not allege that he was treated differently from other similarly situated individuals or that he was discriminated against based on his membership in a vulnerable class . . .") (internal quotation marks and citation omitted).  Additionally, The Court construes Plaintiff's Fifth Amendment claim as a Fourteenth Amendment Due Process claim, as the Fifth Amendment "governs the conduct of the federal government and federal employees . . ." and here, the federal government and/or a federal employee is not involved.  *See Balaber-Strauss v. Town/Village of Harrison*, 405 F. Supp. 2d 427, 435 (S.D.N.Y. 2005) (internal quotation marks and citations omitted) (dismissing Fifth Amendment claim because plaintiffs did not name the United States government or any United States agency or employee as a defendant).  Accordingly, the Court will address, in turn, what it has interpreted to be Plaintiff's *Monell* claim pursuant to 42 U.S.C. § 1983, Fourth Amendment Claim, and Fourteenth Amendment Claims.

### A.  Section 1983 and Municipal Liability Against Suffolk County[5]

---

After the fully briefed motion was filed, Plaintiff filed a letter to the Court, which the Court interprets to be a sur-reply (DE 39).  The Court need not address whether to consider the document, as there is no new argument made or any novel information set forth in the letter.

[5] Under the Prison Litigation Reform Act, a prisoner is required to exhaust such administrative remedies as are available prior to bringing an action with respect to prison conditions under § 1983.  *See Abbas*, 2022 WL 355401, at *3 (citing 42. U.S.C. § 1997e(a)).  Defendants do not move to dismiss on grounds for failure to exhaust, presumably because Plaintiff's Complaint references a grievance he filed in relation to being cuffed and shackled.  (DE 1.)

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statue, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.

Section 1983 itself does not create substantive rights, "but rather provides a vehicle by which parties can seek redress for violations of their federally guaranteed rights." *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 416–17 (E.D.N.Y. 2009) (citing *Morris-Hayes v. Bd. of Educ.of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005)). To prevail on a claim under § 1983, a plaintiff must show that the challenged conduct: (1) was "committed by a person acting under state law"; and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

"[U]nder New York law, departments . . . that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) (deciding on a motion to dismiss that a police department is an administrative arm of the municipal corporation and, as such, "cannot sue or be sued".); *see also Melendez v. Nassau County*, No. 10-CV-2516 (SJF)(WDW), 2010 WL 3748743 (E.D.N.Y. Sept. 17, 2010) (dismissing claims against Nassau County Sheriff's Department Division of Correction and the Nassau County Correctional Center because both "are administrative arms of Nassau County, and therefore are not suable entities."). The Suffolk County Correctional Facility is therefore not a proper party to this action. However, in light of Plaintiff's *pro se* status, the Court interprets the Complaint to be against Suffolk County rather than Suffolk County Correctional Facility.

A plaintiff seeking money damages pursuant to a violation of a § 1983 claim must adequately plead personal involvement of defendants regarding the alleged constitutional deprivations. *Hamilton v. Deputy Warden*, 15-cv-4031 (KBF), 15-cv-9458 (KBF), 2016 WL 6068196, at *6 (S.D.N.Y Oct. 13, 2016). Claims for injunctive relief against prison officials may survive a motion to dismiss even if the officials only had a general responsibility to ensure the constitutional rights of the inmate, and were never actually personally involved with the inmate's claim. *Id.* (citing cases).

"It is well established that a plaintiff may not hold a municipality liable pursuant to § 1983 under a theory of *respondeat superior*." *Cantey v. City of N.Y.*, No. 10 Civ. 4043(JPO), 2012 WL 6771342, at *4 (S.D.N.Y. Dec. 11, 2012) (citing *Monell v. Dep't of Social Serv. of City of N.Y.*, 436 U.S. 658, 691 (1978)). To successfully establish a *Monell* claim, it is beyond peradventure that a plaintiff must show that an action pursuant to a municipality's official policy caused the injury. *Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012); *see also Shepherd*, 2018 WL 3738945, at *4 (citing *Monell*, 436 U.S. at (1978)). The "policy or custom" requirement may be satisfied by alleging:

> (1) A formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citation omitted).

"[P]laintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury." *Id.* (citing *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)). Plaintiff must also establish "that the custom at issue is permanent and well-

settled." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege sufficient factual detail and not mere boilerplate allegations that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." *Santagata v. City of N.Y.*, 17-CV-3053 (PKC) (CLP), 2017 WL 2963453, at *2 (E.D.N.Y. July 11, 2017) (internal quotation marks and citation omitted).

Here, Defendant argues that Plaintiff's § 1983 claims against Suffolk County must be dismissed because Plaintiff has not established through the pleading or documentation, an underlying constitutional violation on the part of an individual municipal actor, nor a custom, policy or procedure that caused the alleged violations of his constitutional rights. (DE 38-6 at 15.) The Court agrees. Aside from stating that "[in] November I was told by the Security officer Mr. B. that I'm on Cuff & Shackle because I'm from Rikers Island and shouldn't be trusted," (DE 1), Plaintiff's Complaint fails to allege any facts that an individual municipal actor violated his constitutional rights or that an officially adopted policy or custom resulted in a violation of his constitutional rights. Thus, the undersigned respectfully recommends that Plaintiff's claims pursuant to § 1983 be dismissed. *See Bristol v. Queens Cnty.*, CV 09-5544 (JFB) (AKT), 2018 WL 5077166, at *9 (E.D.N.Y. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 4328828 (E.D.N.Y. Sep. 11, 2018) ("A complaint asserting a § 1983 claim which does not allege facts establishing the requisite personal involvement fails as a matter of law.") (internal quotation marks and citation omitted); *Santagata*, 2017 WL 2963452, at *2 (dismissing Plaintiff's *Monell* claims for failure ". . . to allege any facts to show that the Defendant officers acted pursuant to any municipal policy or custom."); *Santos v. N.Y.C.*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)

(noting that to establish liability under § 1983 "a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."); *Tropeano v. City of N.Y.*, No. 06 CV 2218 SLT, 2006 WL 3337514, at *4 (E.D.N.Y. Oct. 31, 2006) ("Though a plaintiff need not show the existence of an explicitly stated rule or regulation, plaintiff cannot prevail where as here [he] has not identified a policy or custom that caused the denial of a constitutional right."); *see also Bidot v. Cnty. of Suffolk*, CV 19-3925 (SJF) (ARL), 2020 WL 6385072, at * 11 (E.D.N.Y. Aug. 20, 2020) (internal quotation marks and citations omitted), *report and recommendation* adopted, 2020 WL 5747197 (E.D.N.Y. Sep. 25, 2020) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy").

## B. <u>Fourth Amendment Claim for Excessive Force</u>

An officer's use of force is excessive under the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). This reasonableness inquiry "is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . ." *Kingsley v. Hendrickson*, 135 U.S. 389, 297 (2015).[6] Courts must also consider the need to manage the

---

[6] *Kingsley* altered the test previously used in the Second Circuit for excessive force claims, modifying the subjective element. *See Portillo v. Webb*, 16 Civ. 4731 (VEC) (GWG), 2017 WL 4570374, at *4 (collecting cases), *report and recommendation adopted,* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018).

subject facility where the individual is detained.  *Id.*  Reasonableness of the force used may bear on:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989).  When evaluating the reasonableness of handcuffing, courts consider (1) whether the handcuffs were unreasonably tight, (2) whether the defendants ignored pleas that the handcuffs were too tight, and (3) the degree of injury to plaintiff's wrists.  *Bristol*, 2018 WL 5077166, at *21.

Defendant argues that Plaintiff has not alleged any force used aside from the actual act of cuffing and shackling.  (DE 38-6 at 10.)  Defendant further argues that the reason cuffs and shackles were used was because of Plaintiff's underlying charges including Attempted Murder in the First Degree for allegedly stabbing an off-duty Rikers Island officer.  (*Id.*)  Defendant also asserts that if cuffing and shackling were considered excessive force, then every officer who cuffed and shackled an inmate would potentially be violating the inmate's constitutional rights. (*Id.*)  Plaintiff argues that he should not have been cuffed and shackled because he did not know the individual he allegedly attempted to murder was a police officer since he was off duty and intoxicated.  (DE. 38-13.)

The Court finds Plaintiff's arguments in opposition irrelevant in evaluating whether he has stated a claim for excessive force.  When he was transferred to Suffolk County Correctional Facility in July of 2019, the officers were aware of the underlying charges and Plaintiff signed the consent form to the cuff and shackle restraints.  (DE 1; DE 2; DE 38-5.)  Plaintiff continued to sign the restraint form each month up until November of 2019.  (DE 38-5.)  At that time, he was still in pretrial confinement for the attempted murder charges, and in January of 2020

Plaintiff had multiple altercations with another inmate. (*Id.*) Then, Plaintiff refused to follow an officer's orders and threw food and garbage toward an officer in March of 2020. (*Id.*) More significantly though, Plaintiff's Complaint is devoid of any facts asserting that there was actually any force at all used in applying the cuffs and shackles at any time, or that he was physically injured as a result of any force. Accordingly, the undersigned respectfully recommends that Plaintiff's Fourth Amendment excessive force claim be dismissed. *See Bell v. Drakeford*, 18-CV-2225 (JPO), 2020 WL 1819879, at *4 (S.D.N.Y. Apr. 10, 2020) (dismissing excessive force claim finding that plaintiff must allege facts to support the claim rather than simply stating that excessive force was used); *Esmont v. City of N.Y.*, 371 F. Supp. 2d 202, 214-15 (E.D.N.Y. 2005) (discussing reasonableness of handcuffing, noting that a plaintiff must show more than *de minimis* injury); *Bristol*, 2018 WL 5077166, at *21 (dismissing excessive force claim because even though plaintiff alleged that he complained to officers about chain being too tight, plaintiff failed to allege the cuffing caused continuing injury).

### C. Fourteenth Amendment Due Process Claims Regarding Excessive Force and Administrative Segregation[7]

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *Portillo v. Webb*, 16 Civ. 4731 (VEC) (GWG), 2017 WL 4570374, at *3 (S.D.N.Y. Oct. 11, 2017) (citations omitted), *report and recommendation* adopted, 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018). "Fourth and Fourteenth Amendment excessive force claims are judged by the same standard, which examines "whether the force was objectively unreasonable in light of the 'facts

---

[7] "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Thus, because Plaintiff is in pretrial confinement, the Court does not interpret Plaintiff's Complaint as alleging a cause of action under the Eighth Amendment.

and circumstances of each particular case.'" *Malave v. Austin*, 19-cv-5534 (ENV) (SJB), 2021 WL 3603433, at *5 (E.D.N.Y. Aug. 13, 2021) (citing *Lombardo v. City of Ct. Louis, Missouri*, 141 U.S. 2239, 2241 n.2 (2021).

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "The Fourteenth Amendment protects inmates from placement in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' without due process." *Hamilton*, 2016 WL 6068196, at *6 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Courts use a two-prong inquiry to analyze whether an inmate has received procedural due process: (1) whether the plaintiff has a protected liberty interest in not being confined and (2) if that liberty interest exists, whether depriving that interest occurred without due process of law. *Id.* (citation omitted). "A prisoner's liberty interest is implicated by prison discipline . . . only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life . . ." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks and citations omitted) (alteration in original). To determine whether a plaintiff endured an "atypical and significant hardship," Courts consider the extent that disciplinary segregation conditions differ from routine prison conditions and compare the length of disciplinary segregation to discretionary confinement. *Id.* (citations omitted). Making such a determination requires examining the actional circumstances of confinement. *Id.* (holding that "[a] detailed factual record containing information as to the actual conditions in both administrative segregation and for the general population is necessary for the court to make the type of comparison required.") (citation omitted).

To assess whether a restriction on a pretrial detainee comports with substantive due process, a court must determine if the restriction was imposed for punishment or whether the restriction was a result of some other legitimate governmental purpose. *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017). Such legitimate purposes include where such measures were taken in response to evidence that the detainee posed a risk to institutional security, and where the measures taken were not excessive in relation to that purpose. *Id.*, at 56. The Second Circuit generally requires that fact-finding be conducted "before determining whether a prisoner has a liability interest in remaining free from segregated confinement[,]" but where the period of disciplinary confinement is insignificant or the restrictions were relatively minor, a liberty interest may not be implicated. *Hamilton*, 2016 WL 6068196, at *7 (collecting cases).

Under a due process claim, once an inmate demonstrates a liberty interest in avoiding segregated confinement, they must then show they were confined without due process of law. *Id.* Notably, the procedural protections an inmate must be afforded when confined for disciplinary reasons differ from the procedural protections for administrative purposes. *Wheeler-Whichard v. Roach*, 468 Fed. App'x 28, 30 (2d Cir. 2012) (summary order). Administrative segregation requires "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. *Id.* (quoting *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001)). This Circuit has also held that due process requirements may be triggered if defendants label confinement as administrative when such confinement can really only be justified as punitive. *Hamilton*, 2016 WL 6068196, at *6. However, "[a] pretrial detainee's placement in restrictive housing that is

reasonably related to a legitimate governmental purpose is not considered punitive." *Milling*, 876 F.3d at 55.

Defendant argues that that Plaintiff was not deprived of a liberty interest because cuffing and shackling him was necessary for facility security given the underlying charges and his aggressive behavior toward other inmates and correctional facility officers.  (DE 38-6 at 11-12.) Defendant further argues that any claim regarding administrative segregation fails because Plaintiff does not allege how long he was placed there, when he was placed there, or whether he was afforded a hearing at any time thereafter.  (*Id.* at 12.)  Plaintiff argues that because he is innocent until proven guilty, he should not be cuffed and shackled because a person held in pretrial confinement cannot be punished for the crime he is charged of committing.[8]  (DE 38-13.)

For the reasons similar to those stated above in Section IV.B., Plaintiff also fails to state a claim for excessive force under the Fourteenth Amendment.  *See Johnson v. City of N.Y.*, 18-CV-5623 (ALC), 2020 WL 3100197, at *4 (S.D.N.Y. June 11, 2020) (holding that plaintiff who was fighting with detective while in holding cell, pulled out for purpose of being handcuffed, and immediately returned to cell did not adequately allege a Fourteenth Amendment violation because the fact that his head and body hit the wall during removal amounted to *de minimis* force and resulting injuries); *see also Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) (fining "complete absence of any malicious, degrading, and humiliating treatment . . . [does not] give rise to a clear inference of punitive intent on the part of defendants."); *compare with Abbas v. Tate*, 20-cv-3636 (JGK), 2022 WL 355401, at *4 (S.D.N.Y. Feb. 4, 2022) (denying motion to dismiss excessive force claim under Fourteenth Amendment where plaintiff alleged that he

---

[8] Plaintiff also argues that his attempted murder charges were not for the attempted murder of an officer (*Id.*), although it appears that he is misconstruing the text in New York State Unified Court System printout listing the charges.

complied with officer's directive to stop hurting another inmate, and officer slammed plaintiff's head into wall while his hands were restrained); *see also Davis. v. U.S.*, No. 03 Civ. 1800(NRB), 2004 WL 324880, at *10 n.6 (S.D.N.Y. Feb. 19, 2004) (citation omitted) (finding that injuries do not need to be permanent or severe, but must be physical to recover under an excessive force claim).  On this claim, it does not appear anything more or additional could be pleaded to cure this defect.

Additionally, Plaintiff's claim alleging wrongful placement in administrative segregation fails because the Complaint is completely devoid of any details as to what the administrative segregation conditions were, how long Plaintiff was placed there, whether and when he was afforded a hearing, or the basis for which he was segregated.  Comparing this matter to *Hamilton*, 2016 WL 6068196, is instructive.  There, Defendants argued that Plaintiff failed to state a due process claim for his confinement in punitive segregation and for the conditions of "ESH" housing.  *Id.* at *9-10.  The Court dismissed Plaintiff's punitive segregation claim for failure to allege that the conditions for eight days following a hearing were extraordinarily harsh, but denied dismissal of the "ESH" claim because plaintiff alleged a comparison to ordinary prison conditions and a timeframe.  *Id.* at *10.  Here, Plaintiff provides absolutely no detail as to the conditions or duration of the alleged administrative segregation.  Thus, the claim is entirely too vague to consider whether a liberty interest in avoiding segregated confinement exists, and if so, whether Plaintiff has been deprived of that interest.  Dismissal is recommended, but on this claim, leave to replead should be granted.

Accordingly, the undersigned respectfully recommends that Plaintiff's Fourteenth Amendment Due Process claims for both excessive force and administrative segregation be

dismissed, however with leave to amend the administrative segregation claim for the reasons set forth below.

**D.    Leave to Replead**

Pursuant to Rule 15(a), "[t]he court should freely give leave [to amend pleadings] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]he Court may *sua sponte* grant leave to amend."  *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004).  "A *pro se* plaintiff who brings a civil rights action should be fairly freely afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint."  *Boddie v. N.Y.S. Div. of Parole*, No. 08-cv-911 (KAM)(LB), 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009) (internal quotations and citations omitted).  "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Bell*, 2020 WL 1819879, at *6 (citations omitted).  Although *pro se* plaintiffs are typically granted leave to amend a deficient complaint, leave to amend may be denied if the amendment would be futile. *Hassan v. U.S. Dept. of Veterans Affs.*, 137 F. App'x 418, 420 (2d Cir. 2005).  "A proposed amendment may be deemed futile if the claim would be unable to withstand a Rule 12(b)(6) motion to dismiss."  *Bonner v. Bank of N.Y. Mellon*, CV 15-3280 (SJF)(GRB), 2016 WL 1426615, at *7 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 1238234 (Mar. 28, 2016) (citation omitted).

Defendant argues that Plaintiff should not be afforded leave to amend his Complaint because even upon a liberal reading of the complaint, no constitutional violation is asserted.  (DE 38-6 at 16.)  However, Defendant's argument is based on the Complaint as it stands, rather than considering whether amending the Complaint may cure any defects.  The undersigned finds that

no amendment could cure Plaintiff's excessive force claims in regard to the cuffs and shackles for the reasons stated herein. However, it is respectfully recommended that Plaintiff be permitted leave to amend his Complaint with regard to his § 1983 claims (*i.e.*, to possibly name an individual Defendant(s), and/or allege a municipal custom or policy) and with regard to his Due Process claim regarding administrative segregation.

## VI.    CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that: (1) Plaintiff's § 1983 claims be dismissed; (2) Plaintiff's Fourth Amendment claim for excessive force be dismissed; (3) Plaintiff's Fourteenth Amendment claim for excessive force through the use of cuffing and shackling be dismissed; and, (4) Plaintiff's Fourteenth Amendment claim alleging a Due Process violation regarding administrative segregation be dismissed.

The undersigned further recommends, as discussed above in Section IV.D., that such dismissal shall be without prejudice, and that Plaintiff be granted leave to amend the Complaint as to his § 1983 claims and Fourteenth Amendment claim of a Due Process violation regarding administrative segregation. *See Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (finding that under Fed. R. Civ. P. 15(a)(2), leave to amend should be given freely "when justice so requires," including leave to amend *sua sponte* when the court dismisses most of a party's claims on the basis of an inadequate pleading).

## VII.    OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel, who is hereby directed to serve a copy upon Plaintiff on or before July 20, 2022 and file proof of service on ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1)

(2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the Hon. Gary R. Brown, the District Judge assigned to this action, prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
July 19, 2022

**Respectfully submitted,**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge